No. 23-55367

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LANA RAE RENNA, et al.,

*Plaintiffs-Appellees,*

*v.*

ROB BONTA, Attorney General of the State of California, AND ALISON MENDOZA, Director of the California Department of Justice Bureau of Firearms,

*Defendants-Appellants.*

On Interlocutory Appeal from the United States District Court
for the Southern District of California

No. 3:20-cv-2190-DMS-DEB
The Honorable Dana M. Sabraw

## BRIEF FOR AMICI CURIAE IDAHO, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, VIRGINIA, WEST VIRGINIA, AND WYOMING SUPPORTING PLAINTIFFS-APPELLEES AND AFFIRMANCE

RAÚL R. LABRADOR
 *Attorney General*

Idaho Office of the Attorney
General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
Josh.Turner@ag.idaho.gov

THEODORE J. WOLD
 *Solicitor General*

JOSHUA N. TURNER
 *Deputy Solicitor General*
TIMOTHY J. LONGFIELD
 *Deputy Attorney General*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF AMICI STATES ......................................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 2

ARGUMENT ...................................................................................................... 4

I.    The Second Amendment Codifies a Pre-Existing Right that Belongs to "the People" and Necessarily Restricts State Regulatory Discretion .................................. 4

II.    The UHA is Not a "Reasonable" Public Safety Law—It's a Disguised Handgun Ban ............................................................................................................. 6

III.    The UHA Unconstitutionally Infringes the Right to Keep and Bear Arms ........ 8

CONCLUSION ................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES

*Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus, Inc.*,
  482 U.S. 569, 574 (1987) ................................................................................. 6

*Boland v. Bonta*,
  No. 8:22-cv-1421-CJC-ADS, 2023 WL 2588565 (C.D. Cal. Mar. 20, 2023) .............. 2

*D.C. v. Heller*,
  554 U.S. 570 (2008)................................................................................... *passim*

*Duncan v. Bonta*,
  19 F.4th 1087 (9th Cir. 2021) ...................................................................... 5

*Frein v. Pa. State Police*,
  47 F.4th 247 (3d Cir. 2022) ......................................................................... 11

*Jackson v. City and County of San Francisco*,
  746 F.3d 953 (9th Cir. 2014)................................................................... 11, 14

*McDonald v. Chicago*,
  561 U.S. 742 (2010)................................................................................... 5

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ............................................................................ *passim*

*Renna v. Bonta*,
  No. 20-CV-2190-DMS-DEB, 2023 WL 2846937 (S.D. Cal. Apr. 3, 2023).............. 10

*Schneider v. New Jersey*,
  308 U.S. 147 (1939)................................................................................... 11

*Specht v. Patterson*,
  386 U.S. 605 (1967)................................................................................... 6

*Teixeira v. County of Alameda*,
  873 F.3d 670 (9th Cir. 2017)...............................................................10, 11, 14

*United States v. Alvarez*,
   810 F.2d 879 (9th Cir. 1987) ........................................................................... 6

*Virginia v. Moore*,
   553 U.S. 164 (2008) ......................................................................................... 6

**OTHER AUTHORITIES**

2 Collected Works of James Wilson ....................................................................... 4

THE FEDERALIST No. 44 (James Madison) ....................................................... 11

U.S. CONST. amend. II ............................................................................... 1, 8, 10

## INTEREST OF AMICI STATES

The States of Idaho, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Hampshire, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming respect the right of the people to keep and bear Arms. They agree with the Constitution that the right protected by the Second Amendment is "necessary to the security of a free State." U.S. CONST. amend. II. For this reason, Amici States have taken unapologetic stands to defend the Second Amendment.

California, on the other hand, has enforced its Unsafe Handgun Act to unabashedly infringe on fundamental liberties that belong to all Americans. The Act further encourages other governments to experiment with the people's rights. Unless enjoined, its eroding impact will not be confined to California.

In many regards, States are important laboratories of democracy. But when it comes to the Bill of Rights, States are not free to experiment. All States must respect and defend the rights of Americans. Less liberty in California means less liberty for all Americans. Amici States, thus, have a keen interest to nip such incursions in the bud.

Accordingly, Amici States file this brief in support of Plaintiffs-Appellees under Federal Rule of Appellate Procedure 29(a)(2).

## SUMMARY OF ARGUMENT

Two different federal judges in two different federal districts have separately concluded that California's Unsafe Handgun Act violates the Second Amendment. Both courts held that the UHA burdens conduct protected by the plain text of the Second Amendment. And both courts rejected California's identical attempts to meet its burden under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The district court's injunction here—like the district court's injunction in *Boland v. Bonta*, No. 8:22-cv-1421-CJC-ADS, 2023 WL 2588565 (C.D. Cal. Mar. 20, 2023)—is well supported and should be affirmed in full.

The UHA's chamber load indicator, magazine disconnect mechanism, and microstamping requirements prevent law-abiding citizens from purchasing some of the most commonly used modern firearms. Those three requirements also work in tandem with the more recent three-for-one removal requirement to further reduce citizens' firearm options. The combined effect undoubtedly burdens conduct that falls squarely within the plain text of the Second Amendment. *See Bruen*, 142 S. Ct. at 2130-31. And California has not come close to meeting its burden to identify a "well-established and representative historical analogue" justifying the UHA's severe restrictions. *See id.* at 2133. They cannot stand.

California's arguments on appeal reflect a misunderstanding of the Second Amendment. It believes its regulations should be presumed lawful. But the Second Amendment protects a natural right and warns governments with an "unqualified

command" not to infringe on that right. *Id.* at 2130. Thus, California's justifications for the law largely fail to meet the text of the Amendment.

But California's justifications of the challenged UHA requirements as "reasonable" public safety measures also fail. The law is supposedly designed to protect the public from unsafe handguns. California's chosen means? Ban all modern handguns in common use over the last decade and limit the public to grandfathered handguns that become more and more outdated and outmoded by the day. The public is not protected from "unsafe" handguns by banning the newest ones and forcing them to buy the oldest ones. That just doesn't make any sense.

The UHA, however, is not subject to means-end scrutiny. It is subject to *Bruen*'s framework. That framework is demanding and places a stout burden on governments regulating in Second-Amendment territory. And so it is unsurprising that California works hard to avoid its burden under *Bruen*. The threshold question is not, as California and its Amici argue, whether the UHA leaves "law-abiding citizens with an array of options to exercise their Second Amendment right," Dkt. #21, ID 12719274, at 24, or whether the UHA is a "presumptively lawful regulatory measure," Dkt. #13, ID 12714754, at 42. These questions invite error from this Court. The question is simply whether the UHA regulates conduct covered by the "plain text" of the Second Amendment. *Bruen*, 142 S. Ct. at 2126. It does, so it is presumptively unlawful. *Id.* And California has failed to overcome the presumption.

3

ARGUMENT

I. **The Second Amendment Codifies a Pre-Existing Right that Belongs to "the People" and Necessarily Restricts State Regulatory Discretion.**

California's anti-gun regime reflects a misunderstanding of the Second Amendment. That Amendment did not grant Americans anything they did not already possess. *D.C. v. Heller*, 554 U.S. 570, 592 (2008). It instead recognizes and reminds governments—state and federal alike—that "the people" have a "*pre-existing*" right to keep and bear arms. *Id.*; *see also id.* at 580-81, 592 (explaining that "the people" protected by the Second Amendment "refers to a class of persons who are part of a national community" (citation omitted)). Keeping and bearing arms is a natural right; it is pre-political; and it belongs individually to all people as Americans. *See id.* at 585; *see also* James Wilson, Of Crimes Against the Right of Individuals to Personal Safety, *in* 2 Collected Works of James Wilson 1137, 1142, n.x (K. Hall & M. Hall eds., 2007), https://tinyurl.com/2p8244t4 (describing the arms-bearing right as "the great natural law of self preservation"—the right to defend "one's person or house"). States did not confer it, and they cannot limit its core guarantee. *Id.* at 1142 (The right to bear arms "cannot be repealed, or superseded, or suspended by any human institution.").

California and its band of Amici beat the police power drum to justify its restriction of the right. They say, for instance, that the "Second Amendment does not inhibit States from imposing reasonable safety requirements [on] firearms," Dkt. #13, ID 12714754, at 27, and that States enjoy "great latitude under their police powers" to

4

regulate everything from furniture to firearms, Dkt. #21, ID 12719274, at 9-10. But guns are more protected than other consumer goods, which means "certain policy choices" related to them are "off the table." *Heller*, 554 U.S. at 636. So while California may prefer a citizenry with far fewer arms options, the Second Amendment "takes out of the hands of government . . . the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id.* at 634. Put simply, California cannot take a chisel to the Second Amendment and sculpt its own, narrower version of the right.

California's regulatory regime also problematically creates varying Second Amendment zones. In most of the country, Americans can freely acquire the handguns that are "in common use at the time," as is their constitutional right. *Id.* at 627. But in California, Americans are barred from purchasing such arms and are instead limited to buying hypothetical handguns that have yet to hit the market. That turns the right to purchase "the sorts of weapons . . . in common use at the time" on its head—restricting citizens to weapons so uncommon they are not even made or sold. *Id.*

The consequence is a proliferation of zones where the Second Amendment is made "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald v. Chicago*, 561 U.S. 742, 780 (2010)); *see also Duncan v. Bonta*, 19 F.4th 1087, 1172 (9th Cir. 2021) (en banc) (VanDyke, J., dissenting) (observing that the Second Amendment "is subject to a widely varying patchwork quilt of state and local restrictions and bans that would be an embarrassment for any other constitutional right"). That much is apparent from the

handful of Amici jurisdictions supporting California's position. They too are willing to pick apart the Second Amendment by "enact[ing] and enforce[ing]" regulations "like California's." Dkt. #21, ID 12719274, at 9.

But a citizen's ability to exercise his constitutional rights "should be uniform throughout the nation." *United States v. Alvarez*, 810 F.2d 879, 886 (9th Cir. 1987) (Noonan, J., dissenting). There are not "First Amendment Free Zone[s]" across the states, *Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987); there cannot be states with a search-and-seizure open season, *Virginia v. Moore*, 553 U.S. 164, 174 (2008); and there are no partial due process courts in this country, *Specht v. Patterson*, 386 U.S. 605, 609-10 (1967). Neither can there be places where the Second Amendment is given "second-class" status. *Bruen*, 142 S. Ct. at 2156. There is no police power exception to the Second Amendment's unqualified command. *Id.* at 2126.

## II. The UHA is Not a "Reasonable" Public Safety Law—It's a Disguised Handgun Ban.

California and its Amici want this Court to sidestep *Bruen*'s historical analysis. Dkt. #13, ID 12714754, at 31-41; Dkt. #21, ID 12719274, at 14. They *really* don't want the Court to compare the UHA to traditional firearms regulations, knowing California cannot carry its burden and show that the UHA regulates conduct beyond "the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. So they spend most of their briefing spinning the UHA as a "reasonable" handgun safety law

that's harmless to the right to keep and bear arms. Dkt. #13, ID 12714754, at 27; Dkt. #21, ID 12719274, at 14. But the UHA is neither "reasonable" nor anodyne.

There are many adjectives that could describe the UHA, but reasonable is not among them. California justifies the UHA as a "public safety requirement" that is needed to prevent gun manufacturers from victimizing consumers with unsafe handguns. *See, e.g.,* Dkt. #13, ID 12714754, at 33-36. The government Amici in support of the UHA warn that enjoining the Act poses a dire "threat[]" that will "unravel the limited number of laws that incentivize smart, safe, and traceable handguns." Dkt. #21, ID 12719274, at 13. But the problem is that both also stress that the UHA does nothing to prevent people from buying handguns ***without*** the supposed "public safety requirements." *See, e.g.,* Dkt. #13, ID 12714754, at 34 (emphasizing the 800 or so handguns on the roster that do not meet the UHA's requirements prove that the requirements "do not impede any person's ability to purchase or possess a handgun"); Dkt. #21, ID 12719274, at 14 (claiming the UHA poses no Second Amendment issue because "the gun industry can continue to sell hundreds of alternative handguns to Californian consumers"). It's certainly a fuzzy form of logic that says the law must simultaneously regulate and not regulate X to ensure public safety.

The reason for the dissonance becomes clear considering the actual purpose of the UHA. California is boiling Second Amendment frogs. Slowly, but surely, "lawful" handguns in California will either become uselessly outdated and outmoded or dwindle into nonexistence. It's just a matter of time and math under the UHA. Public safety is

a pretext for California's real goal to drastically restrict the availability of handguns. And that aim is anything but harmless for Second Amendment rights.

All of that to say, whether the law is "reasonable" asks the wrong question. California incorrectly thinks that if it can convince this Court that the UHA is a legitimate public safety measure, then the law will survive Second Amendment scrutiny. But even the best-intentioned firearm regulations bolstered by sound public policy and safety studies must give way to "the right of the people to keep and bear Arms." U.S. CONST. amend. II; *see also Bruen*, 142 S. Ct. at 2126 n.3 ("[T]he right to keep and bear arms . . . is not the only constitutional right that has controversial public safety implications.").

## III. The UHA Unconstitutionally Infringes the Right to Keep and Bear Arms.

The district court and Appellees explain well why the UHA is unconstitutional. Their *Bruen* analysis need not be repeated. Amici States offer some supplemental observations in response to specific arguments by California and its Amici supporters.

***Bruen's First Step.*** California and its Amici both invoke *Heller* in arguing that the UHA does not burden Second Amendment protected conduct and so avoids any scrutiny under *Bruen*'s second step. First, they say that as long as people can purchase **some** handguns—no matter how outdated or outmoded—*Heller* leaves government free to regulate. Dkt. #13, ID 12714754, at 37. Second, they say that *Heller* created a presumption of constitutionality for all commercial regulations. Dkt. #13, ID 12714754, at 42-45; Dkt. #21, ID 12719274, at 22-27. On both fronts, *Heller* shows just the opposite.

8

Absent a blanket ban of all firearms, a regulating government will always be able to say that there is no right to purchase a "particular" firearm and people remain free to exercise their arms-bearing right by selecting a different firearm. Dkt. #13, ID 12714754, at 14. That was true in *Heller*, where the District of Columbia only banned handguns but allowed possession of other firearms. *Heller*, 554 U.S. at 629. It is likewise true in California, which bans all modern handguns on the market but allows the purchase of certain grandfathered handguns—for now. And the District of Columbia raised the same argument in *Heller* that California raises here, but the Supreme Court's response puts the argument to bed: "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed." *Id.*

At bottom, California's argument about alternative options is just a way to inject means-end scrutiny into the analysis. But California does not get to skip *Bruen*'s second step by convincing the Court it has exercised a measured regulating hand. The *Bruen* Court could not have made clearer that such means-end analysis has no relevance under the Second Amendment. *Bruen*, 142 S. Ct. at 2129. The Second Amendment protects the right to acquire commonly used handguns, and California doesn't get to decide whether the people have sufficient alternatives. It is as simple as that.

California's second argument fares no better. The *Heller* decision did not exempt "commercial" regulations from *Bruen*'s yet-to-be-articulated framework. California is flat-out wrong to argue that commercial firearm regulations *per se* fall outside the activity

9

protected by the Second Amendment. Commercial regulations cannot be used as back-door handgun bans to accomplish what a direct ban obviously cannot. As California rightly concedes, commercial regulations are perfectly capable of impairing arms-bearing rights and to the extent any commercial regulation does so, it is subject to Second Amendment scrutiny. Dkt. #13, ID 12714754, at 59 (citing *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017)); *see also Renna v. Bonta*, No. 20-CV-2190-DMS-DEB, 2023 WL 2846937, at *7 (S.D. Cal. Apr. 3, 2023) ("Nor do Defendants dispute that 'the right to keep arms, necessarily involves the right to purchase them.'"). It necessarily follows, then, that commercial regulations are not categorically exempt from *Bruen*'s full analysis.

The only "presumption" the Supreme Court recognizes for Second Amendment purposes is that "the Constitution presumptively protects" conduct falling within the ambit of the Amendment's plain text. *Bruen*, 142 S. Ct. at 2129-30. Consistent with *Heller*'s recognition, certain regulatory measures may have an easier go of it under *Bruen*'s second step—but they still need to survive the second step, burden and all.

Both arguments are further instances of California's misunderstanding of the Second Amendment. They treat the Second Amendment as a conferred right that government can tinker with. But keeping and bearing arms is a pre-political and natural right that "shall not be infringed." U.S. CONST. amend. II. California is no freer to limit the purchase of handguns than it is to limit the public spaces for speech. *See Schneider v. New Jersey*, 308 U.S. 147, 163 (1939) (rejecting similar argument that a Los Angeles ordinance was lawful because its "operation is limited to streets and alleys and leaves

persons free to distribute printed matter in other public places"). Its ability to regulate in the Second Amendment space should be difficult. That is why the *Bruen* analysis is so demanding. And it is why California is manufacturing exemptions and presumptions to avoid defending its law under *Bruen*.

So for purposes of *Bruen*'s first step, the plain text of the Second Amendment unquestionably covers conduct the UHA regulates. *See Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017); *Jackson v. City and County of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014). The Second Amendment protects a citizen's right to acquire weapons that are "in common use at the time." *Heller*, 554 U.S. at 627; THE FEDERALIST No. 44 (James Madison) ("No axiom is more clearly established in law, or in reason, than that wherever the end is required, the means are authorized[.]"). But the UHA prohibits citizens from purchasing "common" handguns. And just because citizens may be able to acquire the firearms through some other means matters not. The question at *Bruen*'s first step is whether the challenged law infringes upon a citizen's right to acquire handguns "in common use at the time"—not whether the regulation obliterates the right. *Bruen*, 142 S. Ct. at 2128-30; *see also Frein v. Pa. State Police*, 47 F.4th 247, 254 (3d Cir. 2022) (explaining that to "infringe" on a fundamental right broadly includes instances of government burden or hinderance). The UHA infringes on the right to keep and bear arms, and the degree of infringement is irrelevant under *Bruen*'s first step.

***Bruen's Second Step.*** California complains that the district court required it to "identify a historical twin instead of a historical analogue." Dkt. #13, ID 12714754, at

27. But the historical regulations it offered to carry its burden are far from representative analogues. It mistakenly focuses only on the subject matter of the regulations (firearms) and ignores the distinguishing objects of the regulations. *Bruen*, 142 S. Ct. at 2133 (conducting the step-two analysis requires courts to consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense").

Take for example the "proving laws" on which California relies. The object, or purpose, of those laws was to confirm the integrity of the firearm. They "proved" that what the manufacturer claimed about the firearm was what the purchaser got. The UHA is very different.[1] It requires manufacturers to incorporate certain features in their firearms, and any firearms lacking such features are deemed unsafe, whether the firearms are otherwise manufactured as specified. The UHA's goal is not product integrity; rather, it's product elimination and replacement. And that type of regulation lacks a "well-established and representative historical analogue." *Id.*

Gunpowder storage laws are even more attenuated. Their purpose was fire prevention from volatile black powder. The modern analogue is fire codes, not the UHA. To begin to justify the UHA, California first would need to point to "well-established" historical laws that banned gunpowder because of its danger to public safety and

---

[1] The UHA's drop tests, which are not at issue in this case, are closer analogues to the proving laws. The additional design requirements at issue here are not merely superfluous tests to uncover product defects.

required in its place a different firing agent—and for good measure, it would need to be a firing agent that was commercially unavailable. Of course, those laws never existed.

California thinks that it is sufficient to show that the UHA and proving and gunpowder storage laws share an abstract goal of "consumer safety." But that isn't enough—any exercise of police power is presumed a public safety measure. The Second Amendment places limits on all governments, California included. Broad "public safety" and "consumer safety" interests do not immunize regulations from the Second Amendment's "unqualified command." *Bruen*, 142 S. Ct. at 2130. That is why the Supreme Court dismissed New York's similar attempt at abstraction. The Court granted that regulating firearm possession in certain "sensitive" places was permissible, but it rejected the "attempt to characterize New York's proper-cause requirement as a 'sensitive-place' law"—the "argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." *Id.* at 2133-34. Likewise, accepting California's argument would justify a handgun ban or any other firearm restriction that the legislature deems necessary for public safety.

*     *     *     *     *

California's efforts to remove the UHA from *Bruen*'s full analysis run headlong into this Court's precedent. In *Jackson*, this Court held that regulations on "ammunition do not fall outside . . . the [Second Amendment]." *Jackson*, 746 F.3d at 968. In *Teixeira*, this Court held that the "ability to acquire arms" also fell within the Second Amendment. *Teixeira*, 873 F.3d at 677. A citizen's right to purchase handguns in common use

13

is plainly Second Amendment protected activity. The UHA is subject to *Bruen*'s full analysis—a test it does not pass.

## CONCLUSION

For the foregoing reasons, this Court should affirm.

Respectfully Submitted,

**RAÚL R. LABRADOR**
Attorney General
*State of Idaho*

**THEODORE J. WOLD**
Solicitor General

Date: June 16, 2023

*/s/Joshua N. Turner*
Joshua N. Turner
*Deputy Solicitor General*
Timothy J. Longfield
*Deputy Attorney General*
Idaho Attorney General's Office
Statehouse, Room 210
Boise, ID  83720

### *Additional State Signatories*

STEVE MARSHALL
Attorney General
*State of Alabama*

TREG TAYLOR
Attorney General
*State of Alaska*

TIM GRIFFIN
Attorney General
*State of Arkansas*

ASHLEY MOODY
Attorney General
*State of Florida*

CHRISTOPHER M. CARR
Attorney General
*State of Georgia*

THEODORE E. ROKITA
Attorney General
*State of Indiana*

BRENNA BIRD
Attorney General
*State of Iowa*

KRIS W. KOBACH
Attorney General
*State of Kansas*

DANIEL CAMERON
Attorney General
*Commonwealth of Kentucky*

JEFF LANDRY
Attorney General
*State of Louisiana*

LYNN FITCH
Attorney General
*State of Mississippi*

AUSTIN KNUDSEN
Attorney General
*State of Montana*

MICHAEL T. HILGERS
Attorney General
*State of Nebraska*

JOHN M. FORMELLA
Attorney General
*State of New Hampshire*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

DAVE YOST
Attorney General
*State of Ohio*

GENTNER DRUMMOND
Attorney General
*State of Oklahoma*

ALAN WILSON
Attorney General
*State of South Carolina*

MARTY J. JACKLEY
Attorney General
*State of South Dakota*

KEN PAXTON
Attorney General
*State of Texas*

SEAN REYES
Attorney General
*State of Utah*

JASON S. MIYARES
Attorney General
*Commonwealth of Virginia*

ANDREW BAILEY
Attorney General
*State of Missouri*

PATRICK MORRISEY
Attorney General
*State of West Virginia*

BRIDGET HILL
Attorney General
*State of Wyoming*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a), and Ninth Circuit Rule 32-1, I certify that the attached response brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,458 words.


Date: June 16, 2023                     _/s/ Joshua N. Turner_
                                        Joshua N. Turner

17

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


*/s/ Joshua N. Turner*
Joshua N. Turner