# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————

LANA RAE RENNA, et al.,
*Plaintiffs-Appellees,*

*v.*

ROB BONTA, in his official capacity as Attorney General of California; and
ALISON MENDOZA, in her official capacity as Director of the California Department
of Justice Bureau of Firearms,
*Defendants-Appellants.*

———————

On Appeal from the United States District Court
for the Southern District of California
No. 3:20-cv-02190-DMS-DEB
Hon. Dana M. Sabraw

———————

### APPELLEES' SUPPLEMENTAL BRIEF ADDRESSING
### *DUNCAN V. BONTA*

———————

Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Avenue
Suite 106
Sacramento, CA 95825
(916) 447-4900
brad@benbrooklawgroup.com

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

1. This Appeal Concerns California's Ban On All Handguns Not Listed On The State's "Handgun Roster". ...................................................................... 1

2. 2.The En Banc Decision In Duncan v. Bonta Concerned California's Ban On "Large-Capacity" Magazines ....................................................................... 3

3. Even Though *Duncan* Does Not Alter The Second Amendment Analysis, Remand Is Appropriate So That The District Court Can Consider *Duncan* And *Rahimi* In The First Instance ................................................................ 5

CERTIFICATE OF COMPLIANCE ....................................................................... 8

CERTIFICATE OF SERVICE .................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Clark v. Chappell*,
   936 F.3d 944 (9th Cir. 2019) .................................................................. 6, 7

*Detrich v. Ryan*,
   740 F.3d 1237 (9th Cir. 2013) ..................................................................... 6

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) .................................................................................... 5

*Duncan v. Bonta*,
   No. 23-55805, 2025 WL 867583 (9th Cir. Mar. 20, 2025) ..................... 1, 2, 4, 6

*Ecological Rts. Found. v. Pac. Lumber Co.*,
   230 F.3d 1141 (9th Cir. 2000) ..................................................................... 7

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   597 U.S. 1 (2022) ............................................................................... 2, 3, 5, 6

*Teixeira v. Cnty. of Alameda*,
   873 F.3d 670 (9th Cir. 2017) ....................................................................... 5

*United States v. Rahimi*,
   602 U.S. 680 (2024) ................................................................................. 2, 3

*Yukutake v. Lopez*,
   130 F.4th 1077 (9th Cir. 2025) .................................................................... 5

**Statutes**

Cal. Penal Code § 16740 .................................................................................. 4
Cal. Penal Code §§ 31900–32110 .................................................................... 1

Pursuant to the Court's March 27, 2025 Order, Dkt. 52, Plaintiffs-Appellees submit the following supplemental brief addressing the impact of *Duncan v. Bonta*, No. 23-55805, 2025 WL 867583 (9th Cir. Mar. 20, 2025) on this case.

**1.    This Appeal Concerns California's Ban On All Handguns Not Listed On The State's "Handgun Roster".**

This appeal concerns the constitutionality of California's "Unsafe Handgun Act," which bans the sale of all semiautomatic handguns in the State unless the State has specifically determined that the firearm is not "unsafe." Today, that means the firearm must have two component features—a chamber load indicator and magazine disconnect mechanism—that virtually no handgun in America has. The UHA requires the California Department of Justice to maintain a "Roster" of handguns that may lawfully be sold by licensed firearms dealers. Cal. Penal Code §§ 31900–32110. All handguns, unless specifically determined otherwise, are deemed "unsafe" under the UHA's various technical and other requirements and are excluded from the Roster and therefore banned for retail sale, even though (1) they are commonly and lawfully used throughout the rest of the Nation and (2) as of the time Plaintiffs secured a preliminary injunction, nearly every firearm on the Roster also lacked those features because they were grandfathered in as of 2013.[1]

---

[1] Since the preliminary injunctions were issued in this case and by the Central District in *Boland v. Bonta* (No. 2-55276), several handguns have been added to the Roster that include a chamber load indicator and magazine disconnect mechanism.

1

California has appealed from the district court's preliminary injunction order holding that the UHA's features requirements are unconstitutional under the test prescribed by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). To determine whether a firearm regulation is constitutional under *Bruen*, the analysis begins with the question whether the Second Amendment's plain text covers an individual's conduct; if so, the Constitution presumptively protects that conduct. *See Bruen*, 597 U.S. at 22–24. If that requirement is satisfied, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24; *see Duncan*, 2025 WL 867583, at *7 (quoting *Bruen* and restating the "general methodology for deciding Second Amendment challenges to state laws").

In other words, it is California's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19 (cleaned up). "[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (quoting *Bruen*, 597 U.S. at 24). At bottom, *Bruen*'s analogical analysis is focused on determining "whether [a]

2

challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition." *Rahimi*, 602 U.S. at 692.

The district court found that Plaintiffs' proposed course of conduct—"to commercially purchase off-roster semiautomatic handguns that are in common use for self-defense and other lawful purposes"—was covered by the Second Amendment's "plain text," and was therefore "presumptively protect[ed]" by the Constitution. ER-014–021. Then, turning to *Bruen*'s historical-tradition inquiry, the district court held that California failed to meet its burden of demonstrating that the UHA "is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 24; *see* ER-021–026. On that score, the State proffered two types of historical analogues: A few early American laws requiring firearms to pass an inspection and discharge test before they could be sold, and a handful of fire-safety laws regulating the storage of gunpowder and firearms. Neither set of regulations were "relevantly similar" to the UHA because they imposed far lesser burdens on the right of armed self-defense and were justified by different considerations. ER-022–026.

Although the district court granted the motion for a preliminary injunction, it stayed enforcement of the injunction pending appeal. ER-030–031.

**2.    The En Banc Decision In *Duncan v. Bonta* Concerned California's Ban On "Large-Capacity" Magazines.**

*Duncan* resolved a Second Amendment challenge to California's ban on so-called "large-capacity magazines," which generally prohibits the possession of "any

ammunition-feeding device with the capacity to accept more than ten rounds." *Duncan*, 2025 WL 867583, at *5; *see* Cal. Penal Code § 16740. The en banc Court rejected the constitutional challenge on two independent grounds. *First*, the Court held that large-capacity magazines neither qualified as "arms" protected by the Second Amendment's text, nor were they otherwise protected as accessories "necessary" for a firearm's operation. *Id.* at *7–*10; *see also id.* at *3 (summarizing the Court holding that the Second Amendment's text does not protect "an [optional] accessory or accoutrement" that is "not an 'Arm' in itself").

*Second*, the Court held that, even if such magazines were protected by the Second Amendment's plain text, California had met its burden of demonstrating that its ban falls within the Nation's historical tradition of firearm regulation. *Duncan*, 2025 WL 867583, at *10–*22. Specifically, the Court determined that the ban fit within the "tradition of laws seeking to protect innocent persons from infrequent but devastating harm by regulating a component necessary to the firing of a firearm," as well as a tradition of "laws [enacted] to protect innocent persons from especially dangerous uses of weapons once those perils have become clear." *Id.* at *17; *see id.* at *17–*22 (conducting analysis as to each historical tradition). In this analysis, the Court placed significant weight on the Supreme Court's application of *Bruen*'s methodology in *Rahimi*. *See id.* at *17–*18, *20–21.

4

**3.    Even Though *Duncan* Does Not Alter The Second Amendment Analysis, Remand Is Appropriate So That The District Court Can Consider *Duncan* And *Rahimi* In The First Instance.**

As a matter of plain text, *Duncan*'s holding—that "optional" accessories or accoutrements are not "arms"—has no bearing on Plaintiffs' challenge. The conduct that Plaintiffs wish to engage in (keeping and bearing arms not listed on the Roster for self-defense) is covered by the Second Amendment's text. And the "arms" they seek are likewise covered by the text. "The Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Bruen*, 597 U.S. at 28 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). As this Court recently reaffirmed, "the right to 'possess' a firearm—which *Bruen* recognized is protected by the plain text of the Second Amendment—includes within it the right to take possession of a firearm, *i.e.*, to acquire one." *Yukutake v. Lopez*, 130 F.4th 1077, 1090 (9th Cir. 2025) (reaffirming "that the purchase and acquisition of firearms is conduct that is protected by the plain text of the Second Amendment," as held in *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677–78 (9th Cir. 2017) (en banc)). In short, *Duncan* does not change the straightforward conclusion that Plaintiffs' proposed course of conduct is covered by the Second Amendment's plain text.

*Duncan*'s historical analysis, however, counsels in favor of remand even though it will not change the bottom-line conclusion that the UHA is

unconstitutional. The State can be counted on to argue that the en banc Court's decision to apply a "more nuanced approach" given "<u>both</u> unprecedented societal concerns <u>and</u> dramatic technological changes," *Duncan*, 2025 WL 867583, at *14, impacts the mode of analysis here. Plaintiffs disagree: The modest set of historical regulations compiled by California are not relevantly similar to the UHA in either "how" or "why" they burden the right to armed self-defense. So even if *Duncan*'s application of *Bruen*'s historical analysis has altered the landscape of this case, the State has not carried (and cannot carry) its burden of establishing that the UHA is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

But the fact that the State will be making these new arguments counsels in favor of remand so that the district court can consider *Duncan*'s impact in the first instance. Moreover, the preliminary injunction decision in this case (as in *Boland v. Bonta*, No. 2-55276) was issued before the Supreme Court's decision in *Rahimi*. That fact, too, counsels in favor of remand. "When faced with a determination of applying a new legal principle, '[a] standard practice . . . is to remand to the district court for a decision in the first instance.'" *Clark v. Chappell*, 936 F.3d 944, 971 (9th Cir. 2019) (quoting *Detrich v. Ryan*, 740 F.3d 1237, 1248 (9th Cir. 2013) (en banc)). Because this Court "operate[s] more effectively as a reviewing court than as a court of first instance," remand would allow later appellate review of the UHA's

constitutionality with 'the benefit of the district court's analysis' on the new standard." *Id.* at 971–72 (citations omitted); *accord Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) ("Our judicial system generally assumes that consideration of an issue at both the trial court and appellate court level is more likely to yield the correct result, because the issue will be more fully aired and analyzed by the parties, because more judges will consider it, and because trial judges often bring a perspective to an issue different from that of appellate judges.").

In short, the Court should remand so that the district court can address the intervening decisions in *Rahimi* and *Duncan* in the first instance.

Respectfully submitted,

s/ Bradley A. Benbrook

Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Avenue
Suite 106
Sacramento, CA  95825
(916) 447-4900
brad@benbrooklawgroup.com

*Counsel for Plaintiffs-Appellees*

April 17, 2025

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the word limit prescribed in the Court's March 27, 2025 Order directing supplemental briefing (Dkt. 52), because this brief contains 1,570 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

Dated: April 17, 2025

s/Bradley A. Benbrook<br>
Bradley A. Benbrook

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Bradley A. Benbrook<br>
Bradley A. Benbrook